DELL, Judge.
Patricia Fruetel appeals her conviction and sentence for trafficking and conspiracy to traffic in cocaine. Appellant raises numerous points on appeal; however, we find it necessary to discuss only one of those points since we find it dispositive. Appellant contends the trial court erred when it denied her motion to dismiss and motions for judgment of acquittal where the evidence established entrapment as a matter of law. We agree and reverse and remand this cause with directions to the trial court to discharge appellant.
Appellant had no prior convictions. Special Agent Lou Cabanillas admitted that, prior to his discussions with an informant named Aníbal Duarte, appellant was not under investigation. On March 30, 1990, Duarte pled guilty in federal court to cocaine-related charges and entered into an agreement that provided “if he were able to provide information which would lead to *698 an arrest of a substantial violator, a seizure of a substantial amount then that would be brought to the attention of the judge at sentencing.” Agent Cabanillas claimed Duarte was not a confidential informant but merely a source of information and, therefore, Cabanillas did not review the federal guidelines with him concerning the conduct of confidential informants.
Appellant testified that sometime in 1989, she and Vaden Williams, her co-defendant, met Duarte and his girlfriend in Florida. In February, 1990, Duarte placed between fifteen and twenty telephone calls to appellant in Virginia. Appellant loaned Duarte $750.00 to pay his girlfriend’s medical bills and to repair his car. In March, 1990, appellant called Duarte and inquired about her money. Duarte told appellant he did not have the money but invited her to come to Florida to work out a deal.
Appellant and Williams, a married man, decided to travel to Florida to rekindle their extramarital relationship and to collect her money from Duarte. After appellant and Williams arrived in Florida on April 3,1990, she called Duarte and told him she wanted her money. Appellant met with Duarte the same day. He told her he had a gold watch in a pawn shop and a buyer for the watch and that he needed $2,000 to retrieve the watch so that he could sell it and repay her. Appellant gave Duarte the $2,000 but required him to give her the keys to his car as collateral for the money.
The next morning Duarte told appellant there was never a watch and that he had instead given her money to an individual as part of a drug deal. He explained he had told the individual that appellant had the rest of the money and would conduct the actual transaction. Appellant testified that Duarte warned her, “[Djon’t F this up,” and that if she did, they would both be in danger and maybe even be killed. Duarte had contacted Agent Cabanillas the previous day and told him he was now in a position to arrange a drug deal. Cabanillas was not interested in any deal less than five kilograms, but Duarte persisted and Cabanillas agreed to meet with appellant.
On the afternoon of April 4, 1990, appellant and Duarte met Agent Cabanillas in a restaurant. Appellant and Cabanillas spoke briefly about the drug transaction. Cabanillas wanted to sell at least five kilograms of cocaine, but appellant refused stating she only wanted two kilograms because she was “ouncing it out” and did not want to expand her business. They discussed a price of $32,000 for two kilograms. Cabanillas gave appellant his beeper number so that she could arrange a later meeting. Cabanillas testified appellant told him she had advanced Duarte $3,000 but did not say for what purpose. Appellant claimed the amount was $2,750. When asked whether he recorded this conversation with appellant, Cabanillas stated:
We were not going to pursue an investigation against Ms. Fruetel. And for that reason I didn’t open an investigation until I was going to speak with her and find out whether or not she was interested in purchasing cocaine.
Appellant testified that after the meeting, Duarte told her:
He said, it’s not that bad. He said, don’t act so nervous. They’ll start thinking something’s funny. And he told me what to look for. He said, it should be a bag of white powder. He said, all you have to do is just open it up, and he said put a little bit on your finger. Put some on your tongue. He said, it should taste bitter. He said, it will make your tongue numb and he gave me a knife in which to open it. And said, just remember. He said, we’re both in trouble. If you don’t do this we’re both going to be hurt and maybe even they’ll even hurt your boyfriend.
She further testified when they returned to her hotel, Duarte took a bag of money from the trunk of his car and put the money into appellant’s shoulder bag and placed the bag in her trunk. This money was intended for the drug deal.
The drug transaction took place at a hotel later that day. Agent Cabanillas and another detective, Kallman, testified appellant and Williams got out of the car and went to the trunk. Although Kallman did *699 not see what they were doing, Cabanillas observed appellant putting money into a brown shoulder bag as Williams watched. Appellant testified she went to the trunk alone and merely retrieved her bag. Once in the hotel room, Cabanillas counted the money. Appellant said she only had $31,-000 because Duarte told her to take out $1,000 for his expenses. Appellant cut into one of the bags and tasted the cocaine. Cabanillas testified the way appellant tested the cocaine indicated her familiarity with the drug. According to Cabanillas, appellant complained that one of the bags was too yellow and that she did not know if it would mix well. Cabanillas told her he would give her a discount on a future deal. Appellant put the drugs in her bag and was arrested. Agent Cabanillas and another detective, Hendrick, testified Williams stated after his arrest that he was down there to purchase drugs but did not know that it was cocaine.
In State v. Hunter, 586 So.2d 319 (Fla.1991), the supreme court removed any doubt that appellant may rely on the objective entrapment standard established in Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). Following Hunter, this court stated in Ricardo v. State, 591 So.2d 1002 (Fla. 4th DCA 1991):
Cruz establishes that there are two aspects of the defense of entrapment: one tested objectively by the court and the other subjectively by the trier of fact.
The threshold test is an objective one focusing on the conduct of the law enforcement personnel involved, and whether that conduct falls below the standard of proper use of governmental power. The trial court addresses this issue by applying a two-prong test and making a determination as a matter of law before the case is presented to the jury.
The first prong of this inquiry is whether the police conduct has as its goal the interruption of a specific ongoing criminal activity. This inquiry thus addresses the problem of law enforcement personnel “making” crime, that is, police seeking to prosecute a criminal where no crime would have been committed but for the police conduct originating the crime.
The second prong is whether law enforcement has utilized means reasonably tailored to apprehend only those already involved in ongoing criminal activity. This phase of the inquiry addresses the problem of government agents using inappropriate techniques to induce or encourage an individual to engage in conduct constituting a criminal offense where the individual normally would not have engaged in such conduct.
If either prong is violated, then there is entrapment as a matter of law and the entrapped individual is entitled to be discharged.
Id. at 1005-06.
The facts in this case show that the state violated both prongs of the Cruz objective standard for entrapment.
Regarding the first prong of the Cruz objective entrapment test, appellant had no prior convictions. Agent Cabanillas admitted that, prior to his discussions with Duarte, appellant was not the subject of an ongoing criminal investigation. Cabanillas initially did not even wish to pursue Duarte’s suggestion of a drug transaction involving appellant. The record, therefore, does not contain any evidence that would show “the police conduct [had] as its goal the interruption of a specific ongoing criminal activity.”
The record also shows the state violated the second prong of the Cruz test. Prior to the drug transaction involving appellant, Duarte entered into an agreement with the prosecutor that, if performed, could result in a reduction of his sentence. He initiated the drug transaction by inducing appellant into giving him money to retrieve a watch and then told appellant he had used the money to initiate a drug deal involving her. He advised her on how to actually proceed with the deal and warned her that she and Williams might suffer harm and even death if she did not participate in the deal. Duarte furnished the money to purchase the cocaine and Agent Cabanillas furnished *700 the cocaine. Cabanillas did not review the confidential informant guidelines with Duarte and did not record Duarte’s or his meetings with appellant, except for the recording of the actual drug transaction. In short, the record shows Duarte acted in the drug transaction without supervision and the record does not contain any evidence that would show the police “utilized means reasonably tailored to apprehend only those already involved in ongoing criminal activity.” Since we conclude that the state’s action constituted entrapment as a matter of law, we do not need to address the state’s factual argument since it applies to subjective entrapment.
Accordingly, we must hold the state’s actions in this case constituted entrapment as a matter of law. We reverse appellant’s convictions and remand this cause to the trial court with instructions to discharge appellant.
REVERSED and REMANDED.
GUNTHER and POLEN, JJ., concur.