638 So.2d 966 (1994)
Patricia FRUETEL, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2970.
District Court of Appeal of Florida, Fourth District.
May 25, 1994.
Order Denying Rehearing July 6, 1994.
*967 Anthony C. Musto, Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Don M. Rogers, Asst. Atty. Gen., West Palm Beach, for appellee.

UPON MANDATE OF THE SUPREME COURT
DELL, Chief Judge.
In Fruetel v. State, 609 So.2d 697 (Fla. 4th DCA 1993), we held appellant was entitled to a judgment of acquittal on charges of trafficking and conspiracy to traffic in cocaine because the evidence established objective entrapment as a matter of law. Pursuant to the Supreme Court of Florida's mandate, we now reconsider our earlier opinion in light of *968 the supreme court's subsequent decision in Munoz v. State, 629 So.2d 90 (Fla. 1993).
In Munoz, the supreme court said:
Given the history of the entrapment defense, we find that the legislature, in establishing a legislatively created entrapment defense through section 777.201, codified the subjective test delineated by the United States Supreme Court as the means for determining the application of that defense... . Three principles arise under this test. The first two involve questions of fact and differing burdens of proof, and the third addresses whether the issue of entrapment must be submitted to the jury or whether the issue can be decided by the judge as a matter of law.
The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charged. On this issue the accused has the burden of proof and pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged; that is whether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense. On this second question ... the defendant initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt. In rebutting the defendant's evidence of lack of predisposition, the prosecution may make "an appropriate and searching inquiry" into the conduct of the accused... . However, admission of evidence of predisposition is limited to the extent it demonstrates predisposition on the part of the accused both prior to and independent of the government acts. Further, care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement.

Id. at 99 (emphasis added).
Appellant claimed the evidence established entrapment as a matter of law because a confidential informant participating in a substantial assistance program induced her to commit a crime which she was not predisposed to commit. At her trial, she offered the following explanation of the events surrounding her arrest.
While on vacation in Florida in 1989, appellant and Vaden Williams, her codefendant and with whom she was having an extramarital affair, became friends with Anibal Duarte and his girlfriend. In February, 1990, she loaned Duarte $750 to repair his car and pay his girlfriend's medical bills. Appellant called Duarte the following month to inquire about her money. He suggested they work something out. Unknown to appellant at this time, Duarte had been convicted on federal drug charges and had agreed to provide substantial assistance to federal authorities in exchange for leniency at his sentencing. Appellant felt a trip to Florida might revive her troubled relationship with Williams and provide an opportunity to collect her money from Duarte. Williams agreed to make the trip and the couple chartered a plane from Virginia to Fort Lauderdale, flown by Mitchell Britt on April 3, 1990. Duarte met appellant at her hotel that same day and told her he would sell his gold watch, he already had a buyer for the watch and would repay her from the anticipated proceeds. He needed, however, $2,000 to reclaim his watch from a pawn shop and asked her to provide the money. Despite Duarte's existing indebtedness to appellant, she agreed to loan him an additional $2,000. Appellant and Duarte drove to the pawn shop later that evening. The pawn shop was closed and Duarte suggested he pick up the watch in the morning and drop by her hotel to repay her after selling the watch. Appellant insisted she keep Duarte's car overnight as collateral and drive him to the pawn shop in the morning.
The following morning, when appellant arrived at Duarte's residence, Duarte confessed he had never pawned a watch and had used appellant's $2,000 as a partial payment in a cocaine drug transaction. He told her she was "in trouble"; he had informed the seller that appellant would buy the cocaine and provide the balance of the money. He *969 warned her "don't f this up" because they both could get hurt or even killed. Duarte promised appellant he would return her $2,750 after she delivered the cocaine. Duarte introduced appellant later that day to DEA Special Agent Cabanillas, who pretended to be a drug dealer. The three met at a restaurant to finalize the drug deal. After this meeting, Duarte coached appellant on how to behave when buying the cocaine. According to appellant, he again warned her that if she did not go through with the drug deal, they, and possibly her boyfriend, might get hurt. She testified that when she and Duarte returned to her hotel that afternoon, Duarte took money from the trunk of his car and placed it into an overnight bag which he then placed in the trunk of her car.
Appellant, Williams and Britt drove to a Howard Johnson's hotel where the drug deal was to take place. Appellant claimed she went to the trunk alone, retrieved the bag containing the money and carried it to the lobby where she met Cabanillas. One of the police officers involved in the surveillance operation at the hotel, however, testified he observed appellant and Williams go to the back of the car together and go through several items in the trunk. The officer observed Williams place something in the pocket or waistband of his trousers. Appellant and Cabanillas joined undercover Detective Hendrick in one of the rooms to conduct the drug transaction. The police made a tape recording of the drug transaction and arrested appellant after she placed two kilograms of cocaine in her bag. Although appellant claimed Williams and Britt knew nothing about the drug deal, the police arrested both men in the hotel parking lot.
The state challenged appellant's entrapment defense by introducing evidence of her predisposition to commit these crimes. Specifically, the state elicited testimony from agent Cabanillas that when he first met appellant, he told her he wanted to sell at least five kilograms of cocaine, but appellant said she wanted only two kilograms because she was "ouncing it out" and had no desire to expand her business. Furthermore, Cabanillas testified that appellant cut into one of the cocaine bags and tested the substance in such a way as to indicate her familiarity with the drug. According to Cabanillas, appellant complained that one of the bags appeared too yellow in color. She indicated her uncertainty as to whether it would mix well, but agreed to accept a discount on a future deal.
In Munoz, the supreme court said:
Section 777.201 directs that the issue of entrapment be submitted to the trier of fact. Such direction is consistent with the subjective evaluation of entrapment because the two factual issues above ordinarily present questions of disputed facts to be submitted to the jury as the trier of fact. However, if the factual circumstances of a case are not in dispute, if the accused establishes that the government induced the accused to commit the offense charged, and if the State is unable to demonstrate sufficient evidence of predisposition prior to and independent of the government conduct at issue, then the trial judge has the authority to rule on the issue of predisposition as a matter of law because no factual "question of predisposition" is at issue.... [W]e construe section 777.201 as requiring the question of predisposition to be submitted to a jury when factual issues are in dispute or when reasonable persons could draw different conclusions from the facts.

Id. at 100 (emphasis added).
Although the above evidence does not demonstrate appellant's predisposition prior to and independent of the government acts, the state introduced other rebuttal evidence sufficient to create a question of fact concerning appellant's intentions. Both Cabanillas and another detective testified that after his arrest Williams admitted the purpose of their trip to Florida was to purchase drugs. The state also elicited testimony from Britt that Williams and appellant told him they were in Florida to pick up a "government contract", a term used in the parlance of the drug trade to denote a drug deal. Furthermore, after appellant's and Williams' arrests, the narcotics detectives discovered approximately $5,000 cash in Williams' pants pocket. A detective testified drug dealers typically carry additional sums of money when transacting a drug deal. Moreover, appellant had in *970 her possession at the time of her arrest a paperback book entitled Dr. Snow, which glamorized the experiences of a drug dealer in southern Florida and contained information on cutting, mixing, evaluating and pricing cocaine. Appellant testified at trial that she purchased this book in Virginia. The trial court, therefore, correctly denied appellant's motion for judgment of acquittal based upon the evidence presented by the state, and, consistent with Munoz, properly submitted the question of appellant's entrapment to the jury.
We further conclude the trial court's instructions[1] coincide with the standard for subjective entrapment as codified in section 777.201, Florida Statutes (1987). By returning a guilty verdict on both counts, the jury rejected appellant's entrapment defense. The scope of our review is limited to determining whether the jury verdict is supported by evidence contained in the record. Questions relating to the credibility of a witness are resolved by a trier of fact and should not be reversed on appeal.
We also consider those issues raised by appellant which we did not address in our initial opinion. Appellant first contends the trial court erred in denying her discovery request for production of the DEA manual containing confidential informant guidelines. The trial court conducted an in camera review of the DEA guidelines and determined they contain sensitive information not relevant to appellant's defense. Appellant argues these guidelines were relevant to her defense because they would establish the government violated her due process rights when agent Cabanillas failed to supervise Duarte in accordance with these guidelines. We find no merit in appellant's argument. The record shows appellant had full discovery regarding the DEA agent's supervision of Duarte. Furthermore, Cabanillas admitted at trial he failed to adequately supervise Duarte and appellant had the opportunity to cross-examine him regarding his lack of supervision.
Appellant next maintains the trial court committed reversible error when, in the absence of appellant and her attorney, it conducted proceedings with Williams' counsel and the prosecutor regarding a tape recording of the drug transaction. The record shows that during trial the court conducted a hearing outside of the jury's presence on codefendant Williams' motion to suppress statements he made to the police after his arrest. At the commencement of this hearing, the trial court recognized the absence of appellant and her counsel, stating she did not have standing to participate. The court ultimately denied William's motion to suppress and then took another recess.
The proceedings again resumed outside of the presence of the jury with only the prosecutor, Williams and his defense counsel present. The transcript does not reveal whether *971 appellant or her counsel participated in these proceedings, leading us to conclude they were absent. Those present discussed the recorded conversation between appellant and the undercover narcotics officers made at the time of the drug transaction. Williams' counsel objected to playing a redacted version of the conversation which did not conform to the trial court's earlier order directing the state to excise certain statements from the tape. The state properly excised appellant's reference to Williams as her partner in Virginia, but the state exceeded the court's directive when it also deleted appellant's statement that Williams was not involved in the Florida drug deal.[2] The court offered to play the unedited version, provided the prosecutor not argue that appellant's statement "he's my partner there" suggested Williams' involvement with drug dealing in Virginia. Although the prosecutor agreed to this stipulation, William's counsel remained adamant in his objection. The trial court thereafter gave Williams' counsel the choice of playing either the unedited version or the overly-edited version to the jury. William's counsel chose the latter. Another recess was taken and the trial court resumed proceedings in the presence of both defendants, their attorneys and the jury.
We agree with the trial court that appellant's counsel did not have standing to participate in the hearing on William's motion to suppress. See U.S. v. Fredericks, 586 F.2d 470 (5th Cir.1978), cert. denied, 440 U.S. 962, 99 S.Ct. 1507, 59 L.Ed.2d 776 (1979). Appellant and her counsel, however, should have been present when the prosecutor and William's counsel discussed the overly-edited tape. As noted in Vileenor v. State, 500 So.2d 713 (Fla. 4th DCA 1987):
The [defendant] has a right to counsel at every critical stage of the proceedings. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), Anderson v. State, 420 So.2d 574 (Fla. 1982). The right to counsel is a fundamental right, Gordon v. State, 469 So.2d 795 (Fla. 4th DCA), rev. denied, 480 So.2d 1296 (Fla. 1985), and the alleged denial of such a right need not be preserved by objection. Ray v. State, 403 So.2d 956 (Fla. 1981).
Id. at 714 (certain citations omitted). Florida Rule of Criminal Procedure 3.180(a) codifies the critical stages of a proceeding where a defendant's presence is required. Rule 3.180(a)(6) mandates the presence of the defendant "when evidence is addressed to the court outside of the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury." We, therefore, conclude the trial court erred when it proceeded to determine which tape would be played in the absence of appellant and her counsel. However, we do not find such error requires our reversal of appellant's conviction.
In Vileenor, we addressed whether the giving of jury instructions during the temporary absence of a defendant's counsel amounted to per se error. Based upon the supreme court's opinions in Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982), and Meek v. State, 487 So.2d 1058 (Fla. 1986), we concluded:
It therefore appears that the per se rule is limited to factual situations involving additional jury instructions or answers to jury questions about testimony or evidence where no notice has been given under rule 3.410.
Id. at 715 (emphasis added). Although Vileenor involved the temporary absence of counsel during the reading of jury instructions, we find harmless error principles applicable here. This court said in Vileenor:
In applying the harmless error standard, the state carries a heavy burden. In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court determined that constitutional error may be harmless. However, in *972 determining whether an error involving the denial of a federal constitutional right during a critical stage of state proceedings can be found to be harmless, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the conviction.
The Supreme Court has adopted a less rigorous standard in other kinds of cases. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Siverson v. O'Leary, 764 F.2d 1208 (7th Cir.1985), these cases were analyzed at length in considering a Sixth Amendment violation arising from a lack of counsel at a critical stage. In Siverson, the court concluded the Chapman test is still the proper standard to apply in such a situation.
Id. at 715.
Applying harmless error analysis, we conclude the state met its burden of demonstrating beyond a reasonable doubt that the trial court's error did not affect the jury's determination of appellant's guilt on the conspiracy charge. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The fact that appellant's counsel was not present during the discussion concerning the use of the overly-edited tape did not affect the outcome of the trial. Application of the harmless error rule requires an examination of the entire record by the appellate court. Id. The jury learned of the exculpatory statement edited from the tape when the prosecutor, during his cross-examination of appellant, inquired if she had told the undercover officers during the drug transaction that Williams had nothing to do with this drug deal. Appellant verified she made this statement. Furthermore, the state presented evidence that Williams accompanied appellant to the trunk of the car, assisted her when she removed the overnight bag containing the money and had approximately $5,000 in his pants pocket at the time of his arrest.
Appellant also maintains the trial court erred in playing the overly-edited tape to the jury because it did not contain her statement that Williams was not involved in the drug deal. She contends the trial court erred because this omitted portion of the tape would have exculpated her on the conspiracy charge. We find appellant failed to preserve this issue for appellate review. The record shows the state published the tape to the jury during its direct examination of Detective Hendrick, one of the undercover officers present when appellant purchased the cocaine. Before playing the tape for the jury, William's counsel objected to the publication of the overly-edited version to the jury because it lacked appellant's statement that Williams was not involved. Appellant concedes her counsel knew an edited version of the tape would be played to the jury, but claims counsel was not aware the tape had been overly edited. The record reveals appellant's counsel was present when the tape was played to the jury. Appellant's counsel neither objected to the content of the tape, requested the omitted portion be played to the jury nor moved for a mistrial. Moreover, appellant's counsel could have cured this alleged error during his cross-examination of Detective Hendrick by asking him if appellant had claimed Williams was not involved.
In sum, we hold the absence of appellant's counsel at the proceedings concerning the editing of the tape was harmless error and that appellant's objection concerning the content of the tape played to the jury was not preserved for appellate review.
As to the remaining issues raised by appellant, we find no basis to conclude the trial court committed reversible error. Accordingly, we affirm.
AFFIRMED.
GUNTHER, J., concurs.
POLEN, J., dissents in part with opinion.
POLEN, Judge, dissenting in part:
While I agree with the majority's analysis and disposition for the most part, there is one point upon which I dissent because I believe it presents reversible error. That is in connection with codefendant Williams's motion to suppress. While the trial court properly found appellant had no standing to argue on Williams's motion, and thus proceeded to hear the motion in the absence of appellant and her attorney, it was error to determine what portions of the tape would be *973 edited out for playing to the jury in their absence. See Mathews v. State, 353 So.2d 1274 (Fla. 2d DCA 1978). A criminal defendant has a constitutional right to be present at all crucial stages of her trial wherein her absence might frustrate the fairness of the proceedings. Garcia v. State, 492 So.2d 360 (Fla. 1986). It can hardly be said that such error is harmless under State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). I would reverse and remand for a new trial.
By Order of the Court:
ORDERED that Appellant's motion filed June 7, 1994, for rehearing or for certification of question of great public importance is hereby denied; further,
ORDERED that Appellant's motion filed June 7, 1994, to conduct in camera review of sealed material and to allow appellant's counsel to review sealed material and to supplement motion for rehearing as appropriate based on such review, or, in the alternative, for reversal of the judgment and sentence is denied.
NOTES
[1] The trial court instructed the jury as follows:

The defense of entrapment has been raised. This means that Patricia Fruetel claims no prior intention to commit the offense period. Excuse me. Claims that she had no prior intention to commit the offense and that she committed it only because she was persuaded or caused to commit the offense by law enforcement officers.
Patricia Fruetel was entrapped if, one, she had no prior intention to commit trafficking in cocaine or the conspiracy to traffic in cocaine or any of the lesser included offense, but, two, was persuaded, induced or lured into committing the offense, and, three, the person who persuaded, induced or lured her into committing the offense was a law enforcement officer, or someone acting for the officer.
It is not entrapment if Patricia Fruetel had the predisposition to commit trafficking in cocaine or conspiracy to traffic in cocaine or any of the lesser included offenses. Patricia Fruetel had the predisposition if before any law enforcement officer or person acting for the officer persuaded, induced or lured her she had a readiness or willingness to commit trafficking in cocaine or conspiracy to traffick in cocaine or any of the lesser included offense if the opportunity presented itself.
It is also not entrapment merely because a law enforcement officer in a good faith attempt to detect crime, [a] provides the defendant the opportunity, means and facilities to commit the offense which the defendant intended to commit, and would have committed otherwise, or [b] uses tricks, decoys or subterfuge to expose the defendant's criminal acts or, [c] was present in pretending to aid or assist in the commission of the offense.
On the issue of entrapment, the state must convince you beyond a reasonable doubt that Patricia Fruetel was not entrapped. (R. 996-997).
[2] The state excised the following portion of the tape:

Undercover Officer: You said they [Williams and Britt] didn't want to come up?
Appellant: No, he's not involved. He's my partner there [in Viginia].
Undercover Officer: So, he's not your partner. He doesn't  He's not getting any of that. He's not getting a cut... .