764 So.2d 813 (2000)
Milo WILSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D98-3758.
District Court of Appeal of Florida, Fourth District.
July 26, 2000.
Rehearing Denied September 1, 2000.
*815 Richard L. Jorandby, Public Defender, and David J. McPherrin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Milo Wilson appeals his conviction of two counts of armed kidnapping. We affirm, and write to address one issue whether reversible error occurred when trial counsel was absent during a portion of jury deliberations.
The trial in this case began on Tuesday, August 18, 1998. Jury selection began at 2:00 p.m. The jury was sworn in the same day at 4:48 p.m. The jury began deliberations on Thursday, August 20 at 2:22 p.m.
At the end of the day on Thursday, the trial judge discussed a scheduling issue with the attorneys. Defense counsel, Marshall Geisser, had business to attend to the next day in Washington, D.C. The trial court was reluctant to excuse the jurors for a three-day weekend. Geisser acknowledged that his "client prefers me to be here and ... that I should be here for this stuff." Geisser suggested that the deliberations might continue in his absence:
Let them deliberate and if no questions arise. There is no problem. If they reach a verdict maybe hold off on announcing the verdict until Monday. The verdict will be done.
The trial judge responded that the jury might have a question and asked Geisser if he could be reached by cellular phone. Geisser said that his cellular phone contract did not allow him to receive calls outside of Florida.
The trial judge then posed another option:
There is another option that we can try. It's one of the least satisfactory of the options is have the jury deliberate tomorrow. If the jury arrives or comes back with a question, your client can make a decision at that point if he want [sic] you there to answer the question or not. If he wants you to there [sic] to answer the question, then we are shut down for the weekend. And I will tell the jury that we are grounded until you return.
After consulting with appellant, Geisser informed the court that his client "indicated that he would prefer me to be present."
The judge voiced his concern that if he excused the jurors until Monday, they would forget the evidence and the instructions. To avoid creating an appellate issue, the judge sought to establish for the record that it was appellant's choice to excuse the jurors for a three-day weekend in the middle of deliberations.
In response, Geisser asked for "a minute or two" to talk to his client. A short while later, Geisser made the following proposal:
Okay. Judge, I think, basically, what I suggested is that, if it is okay with him... that it would seem foolish not to come back and at least try to deliberate and they could reach a verdict tomorrow without any questions, and that would alleviate any of the other problems.
If there is a question that is legally based, what I would suggest is that, we bring them back on Monday when I'm here. Obviously, whoever stands in for me, they don't know any of the facts of case [sic].
Geisser arranged for another attorney to sit with appellant while the jury was deliberating. The trial court determined that appellant agreed that another attorney could "sit in" in place of Geisser while the jury was deliberating and that if a verdict were returned, the judge could receive it, publish it, and poll the jurors.
*816 On Friday morning, the jury returned to deliberate at 8:17 a.m. That morning, the jury sent out a note asking: "How long must we stay in here if we cannot reach an agreement?" During the court proceedings in response to the note, the stand-in attorney took the position that appellant was not his client and that he could not give him legal advice. The trial judge discussed reading the deadlock instruction, either that day or on Monday. While the court was mulling over what course of action to take, the jury reached a verdict.[1] The verdict was published at 10:20 a.m. The judge had the clerk poll the members of the jury.
Wilson argues that reversible error occurred when he appeared at a critical stage of the trial without counsel. We agree with appellant that the stand-in lawyer did not function as the "counsel" contemplated by the constitutional guarantee. Although he was a warm body sitting in counsel's chair, he was not there to give Wilson legal advice. While Wilson waived his right to have Geisser present at the time the verdict was returned, the record does not establish Wilson's knowing and intelligent waiver of his right to counsel for everything that might have arisen during Friday's jury deliberations. The court's colloquy with the defendant was cursory, occurring at the very end of the day after the decision had already been made to bring the jury back on Friday in Geisser's absence.
It is well-settled that a criminal defendant facing incarceration has a right to counsel at every critical stage of the proceedings against him. See Fruetel v. State, 638 So.2d 966, 971 (Fla. 4th DCA 1994) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). The presence of the attorney is essential, because the attorney is "the means through which the ... rights of the person on trial are secured." United States v. Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). To establish a claim of denial of the right to counsel, a defendant "need only show that counsel was absent during a critical stage of the proceedings in order to establish the constitutional violation." Green v. Arn, 809 F.2d 1257, 1263 (6th Cir.1987), cert. granted and judgment vacated on other grounds, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987).
Trial, sentencing, and direct appeal are all critical stages at which a defendant is entitled to counsel. See Smith v. State, 590 So.2d 1078, 1078 (Fla. 2d DCA 1991) (treating right to counsel at sentencing as a critical stage); Ford v. State, 575 So.2d 1335, 1337 (Fla. 1st DCA 1991) (recognizing the right to counsel on appeal) (citing Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)). We have previously held that the reading of jury instructions and discussions concerning evidence outside the presence of the jury are both critical stages of the trial requiring the presence of counsel. See Fruetel, 638 So.2d at 971; Vileenor v. State, 500 So.2d 713, 715 (Fla. 4th DCA 1987).
The return of a verdict is also a critical stage of a trial. See United States v. Osterbrock, 891 F.2d 1216, 1218 (6th Cir.1989) (discussing United States v. Smith, 411 F.2d 733 (6th Cir.1969)); Siverson v. O'Leary, 764 F.2d 1208, 1214 (7th Cir.1985); Headen v. United States, 373 A.2d 599, 600 (D.C.1977); Fla. R.Crim. P. 3.180(a)(8). Discussing and responding to a jury's question during deliberations obviously constitute a critical stage, coming so close to the time when the jury will render a verdict; a court's violation of Florida Rule of Criminal Procedure 3.410 regarding a jury request to review evidence or for additional instructions has long been held to be serious error. See Williams v. State, 488 So.2d 62, 64 (Fla.1986); Ivory v. *817 State, 351 So.2d 26, 28 (Fla.1977). We hold that the in-court discussion in response to the jury's note on Friday was in violation of Wilson's constitutional right to counsel.
In Vileenor, we held that the absence of defense counsel during the reading of jury instructions was a type of constitutional error subject to the harmless error standard of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See Vileenor, 500 So.2d at 715. Under that standard, before a constitutional error can be found to be harmless, "the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the conviction." Id.; see Osterbrock, 891 F.2d at 1218; Siverson, 764 F.2d at 1217; Headen, 373 A.2d at 601; Fruetel, 638 So.2d at 971-72 (citing Vileenor).
Wilson argues that the constitutional error in this case "requires reversal without regard to the harmless error doctrine." To support that contention, Wilson cites Brecht v. Abrahamson, 507 U.S. 619, 629-30, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), which contains the following language:
Trial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by `harmless-error' standards." The existence of such defects deprivation of the right to counsel,[2]for examplerequires automatic reversal of the conviction because they infect the entire trial process. Since our landmark decision in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.
(Internal citations omitted) (emphasis supplied).
For the reasons that follow, we do not read Brecht as classifying every right to counsel violation as a structural defect in the trial requiring automatic reversal. By the citation to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in the above-quoted passage in Brecht, we believe that the Supreme Court was referring to a case involving total deprivation of the right to counsel at trial as an example of a structural defect amounting to per se reversible error.
A strong presumption exists that any constitutional error is subject to harmless error analysis. See Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (citing Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). However, errors constituting "structural defects" "defy analysis by `harmless-error' standards" because they "affect[ ] the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 309, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Put another way, errors involving a structural defect in the framework of a trial
deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence... and no criminal punishment may be regarded as fundamentally fair."
Neder, 119 S.Ct. at 1833 (quoting Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)).
Although structural defects require automatic reversal because they "infect *818 the entire trial process," Brecht, 507 U.S. at 630, 113 S.Ct. 1710 they are the "exception and not the rule." Rose v. Clark, 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (citation omitted); see Neder, 119 S.Ct. at 1833 ("[W]e have found an error to be `structural,' and thus subject to automatic reversal, only in a `very limited class of cases.'") (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citations omitted)).
Citing to Gideon, the Supreme Court has found that "the total deprivation of the right to counsel at trial" constitutes a structural defect requiring automatic reversal.[3]Fulminante, 499 U.S. at 309, 111 S.Ct. 1246 (emphasis supplied). In Gideon, the defendant's request for representation by counsel was denied prior to trial and he was forced to represent himself at all stages of the trial. See 372 U.S. at 337, 83 S.Ct. 792. Hence, "the deprivation of the right to counsel affectedand contaminatedthe entire criminal proceeding." Satterwhite v. Texas, 486 U.S. 249, 257, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).
To summarize, the applicability of harmless error review depends on a constitutional error's classification as "trial error" or "structural defect." The absence of counsel during a critical stage is not always a structural defect automatically requiring a reviewing court to bypass harmless error analysis. See Henderson v. Frank, 155 F.3d 159, 171 (3d Cir.1998) ("Violations of the right to counsel may not always be structural defects which allow a reviewing court to bypass harmless error analysis.") (citing Sullivan v. Louisiana, 508 U.S. 275, 282-83, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (Rehnquist, C.J., concurring)). As the Supreme Court clarified in Satterwhite, absence or deprivation of counsel does not entitle a defendant to an automatic reversal; instead, reversal is only automatic when such deprivation of counsel "affectedand contaminatedthe entire criminal proceeding." 486 U.S. at 257, 108 S.Ct. 1792 (citing Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961)); see Henderson, 155 F.3d at 171.
An example of a Sixth Amendment error which was not a structural defect occurred in Vines v. United States, 28 F.3d 1123 (11th Cir.1994). There, the Eleventh Circuit held that although the defendant's counsel was temporarily absent during a portion of the trial, the error did "not necessarily infect the entire trial," because "no evidence directly inculpating Vines was presented during his counsel's absence." Id. at 1128, 1129. The Vines court determined that the temporary absence of counsel was not a structural defect to which automatic reversal was warranted because the absence did
not necessarily affect the conduct of the entire trial. While trial counsel may exercise poor judgment in absenting himself or herself from a portion of a trial, such flawed judgment does not necessarily infect the entire trial.
Id. at 1129; see also United States v. Rapp, 871 F.2d 957, 965-66 (11th Cir.1989) (applying harmless error analysis to absence of counsel during Allen charge), abrogated on other grounds, U.S. v. Wells, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997); United States v. Guida, 792 F.2d 1087 (11th Cir.1986) (finding harmless error where counsel absent during jury communications).
Applying the trial error/structural defect analysis, we conclude that no structural defect is present in this case. Wilson was *819 without counsel at a critical stage for only a brief period of time. No evidence was presented and no instruction to the jury occurred at a time when Wilson was without representation. On that crucial Friday morning which we are putting under a microscope, no action was taken which could have influenced the jury's verdict. The error complained of is "capable of quantitative assessment." Vines, 28 F.3d at 1129. The constitutional violation did not constitute "a substantial violation of the right involved." Yarborough v. Keane, 101 F.3d 894, 897 n. 1 (2d Cir.1996).
Where a trial error has occurred, it is proper to apply the Chapman harmless error standard to this case. We conclude that the error in this case was harmless beyond a reasonable doubt. The absence of counsel on Friday morning did not contribute to the judgment of conviction. Before the court took any action in response to the jury's question, the jury indicated that it had reached a verdict. The court did nothing that could have influenced the jury's verdict; there was no contact with the jury that might have been altered by input from defense counsel. Only a short period of time elapsed from when court reconvened to consider the question until the time the jury announced its verdict. The trial judge polled the jury in Wilson's presence "to explore any inconsistency or coercion in the returned unanimous verdict." Osterbrock, 891 F.2d at 1218. Prejudice resulting from defense counsel's absence is "purely speculative and unsubstantiated." Vileenor, 500 So.2d at 716.
As to the other points on appeal, we find no error.
AFFIRMED.
GUNTHER and SHAHOOD, JJ., concur.
NOTES
[1] The record does not reflect the time when the court received the Friday morning note. The discussion in response to the jury's note fills only eight pages of transcript, up to the time when the jury announced that it had reached a verdict.
[2] At this point in Brecht v. Abrahamson, 507 U.S. 619, 629 n. 4, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court cited to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
[3] Other structural errors include a judge who is not impartial, unlawful exclusion of members of the defendant's race from the jury, denial of the right to self-representation at trial, and the right to public trial. See Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).