GROSS, J.
A lawyer suspended from the practice of law represented a client in a criminal proceeding at a docket call during his one-month suspension, without the knowledge of the trial judge. We reject the claim that per se reversible error occurred, because this “trial error” was harmless, and thus did not constitute a structural defect that infected the entire criminal proceeding.
On May 13, 2008, the State charged Nicole Thornhill in a five-count indictment with first degree murder and other crimes. John Clement was appointed as special public defender to represent Thornhill. From December 8, 2008, to January 7, 2009, Clement was suspended from the practice of law in Florida. During his one-month suspension, Clement twice received discovery from the State; he also appeared in court on January 6 for a brief docket call. At the docket call, Clement acknowledged that Thornhill had already waived speedy trial and requested a continuance, which the trial court granted.
Three months after the Florida Bar reinstated Clement, Thornhill’s grandmother submitted an ex parte letter to the trial court raising concerns about Clement’s representation of her granddaughter. Two days later, the trial court held a status conference in which the parties discussed trial dates, juror logistics, and other matters, including the contents of the grandmother’s letter. Clement told the trial court that the letter was not from his client, who he claimed was satisfied with his representation. The court then questioned Thornhill under oath, at which point she affirmed that she had read the letter and was satisfied with her lawyer’s representation. The court asked her, “Do you have any issues or questions that you need me to address about the representation of your attorney?” Thornhill replied, “No sir, everything’s fine.”
On November 13, 2009, the trial court held a change of plea hearing, which began with the court addressing a November 7 letter Thornhill had written to the prosecutor’s office. In the letter, she wrote that Clement had “family issues and has not been able to come and meet with me.” Additionally, she expressed concern that, although she had an upcoming court appearance, she did not know the details of a *951 plea offer from the State. She wanted time to discuss it with her family because she was “ready to move on, accept responsibility for [her] wrongdoing.”
At the hearing, the trial court clarified that the plea offer was not to an agreed number of years, but rather to a reduced charge. The judge also confirmed that Thornhill understood the details of the plea offer. The court then asked her, “[H]as everything in your letter been addressed or do we need to address more?” Thornhill replied, “It’s been addressed.” Nonetheless, the court inquired further and asked her if she wanted time to speak with Clement. When Thornhill indicated that she did, the court moved onto other cases to give her a chance to do so.
When the ease was recalled, the judge conducted an extensive plea colloquy and determined that Thornhill entered the plea freely and voluntarily. Sentencing was scheduled for January, 2010, to allow for the completion of a presentence investigation. On January 14, the trial court sentenced Thornhill to 600 months in prison for second degree murder and 360 months on the remaining four charges, all sentences to run concurrently.
Thornhill argues on appeal that Clement’s representation of her during his one-month suspension constitutes a Sixth Amendment violation that is per se reversible error.
“Per se reversible errors are limited to those errors which are ‘so basic to a fair trial that their infraction can never be treated as harmless error.’ ” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). When involving constitutional violations, such “errors are always harmful.” Id. “The unique and only function of the rule of per se reversal is to conserve judicial labor by obviating the need to apply harmless error analysis to errors which are always harmful.” Id. A complete “[d]enial of counsel is always harmful, regardless of the strength of the admissible evidence, and can properly be categorized as per se reversible.” Id. at 1137. The presence of an attorney is essential, because the attorney is “the means through which the ... rights of the person on trial are secured.” United States v. Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
Thus, per se reversible error arises from a complete denial of counsel at a critical stage of a criminal proceeding. See, e.g., Hampton v. State, 848 So.2d 405 (Fla. 2d DCA 2003); Wofford v. State, 819 So.2d 891 (Fla. 1st DCA 2002).
However, for the purpose of deciding whether a denial of counsel constitutes per se reversible error, Florida courts have drawn a distinction between complete and partial deprivations of counsel. See Jackson v. State, 983 So.2d 562, 575-76 (Fla.2008); Wilson v. State, 764 So.2d 813, 818-19 (Fla. 4th DCA 2000). Partial or temporary absence of counsel during a critical stage of a criminal proceeding is not per se reversible error; rather, it is a “trial error” that is subject to harmless error analysis. Wilson, 764 So.2d at 818; Fonseca v. State, 956 So.2d 1259, 1260 (Fla. 4th DCA 2007); see also Jackson, 983 So.2d at 575-77. As we explained in Wilson,
[T]he applicability of harmless error review depends on a constitutional error’s classification as “trial error” or “structural defect.” The absence of counsel during a critical stage is not always a structural defect automatically requiring a reviewing court to bypass harmless error analysis. See Henderson v. Frank, 155 F.3d 159, 171 (3d Cir.1998) (“Violations of the right to counsel may not always be structural defects which *952 allow a reviewing court to bypass harmless error analysis.”) (citing Sullivan v. Louisiana, 508 U.S. 275, 282-83, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (Rehnquist, C.J., concurring)). As the Supreme Court clarified in Satterwhite [v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) ] absence or deprivation of counsel does not entitle a defendant to an automatic reversal; instead, reversal is only automatic when such deprivation of counsel “affected— and contaminated — the entire criminal proceeding.” 486 U.S. [249,] 257, 108 S.Ct. 1792, 100 L.Ed.2d 284 [(1980)] (citing Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)).
764 So.2d at 818.
Representation at a critical stage of a criminal proceeding by an attorney suspended from the practice of law for nontechnical disciplinary reasons is the legal equivalent of representation by no attorney. See State v. Joubert, 847 So.2d 1023, 1024 (Fla. 3d DCA 2003). “A disbarred, or even suspended, attorney is simply not ‘counsel’ for purposes of ‘effective assistance of counsel.’ ” Id. Such an attorney occupies a status similar to an unsupervised legal intern who represents a defendant without the defendant’s “knowledge or agreement.” See Cheatham v. State, 364 So.2d 83, 83-84 (Fla. 3d DCA 1978).
Assuming that Clement’s representation of Thornhill at the calendar call was a partial deprivation of counsel, we conclude that any error in this case was harmless beyond a reasonable doubt and did not contribute to her convictions. Wilson, 764 So.2d at 817. The events that occurred in the case during Clement’s one-month suspension were largely ministerial. Even though Clement was suspended from the practice of law when he attended the January 6 docket call, Thornhill received the requested postponement. Thornhill did not suggest that her case would have profited from a January trial date. During plea negotiations and the plea conference, Clement was licensed to practice law in Florida and was not under any suspension. Furthermore, under questioning by the trial judge, Thornhill did not voice any dissatisfaction with her counsel.
This case is distinguishable from Jou-bert, upon which Thornhill heavily relies, because Thornhill’s January 6 docket call was insignificant to her case. In contrast, Joubert involved a disbarred attorney who represented a defendant during the two most critical stages of a criminal proceeding. See Joubert, 847 So.2d at 1024. In Joubert, the Supreme Court accepted a defense attorney’s disciplinary resignation, which was “tantamount to disbarment.” Notwithstanding the disciplinary resignation, the attorney represented a defendant at a murder trial and sentencing. Id. The third district affirmed the circuit court’s order vacating the conviction on the ground that the facts of the case constituted a per se Sixth Amendment violation. Id. at 1024, 1026. Joubert did not, however, establish a rule that per se reversible error occurs whenever a disbarred or suspended attorney represents a client during any portion of a criminal case, no matter how ministerial. Rather, Joubert turned on the fact that the disbarred attorney represented the defendant throughout his trial and sentencing, the two most important stages of a criminal proceeding.
We have considered the other issue raised and find no double jeopardy violation.

Affirmed.

CONNER, J., and COX, JACK S., Associate Judge, concur.